O

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| A., as Next of Friend of B., C., D., and E., Minor Children, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION NO. 5:05-cv-237 |
| LAREDO INDEPENDENT SCHOOL DISTRICT; and PRINCIPAL, | § § § § | |
| *Defendants*. | § § | |

## **OPINION & ORDER**

Pending before the Court is Defendants' Motion for Judgment on the Pleadings. [Dkt. No. 14]. Upon due consideration of Defendants' Motion, the responsive filings, and the governing law, the Court GRANTS in part and DENIES in part Defendants' Motion.

### I.     PROCEDURAL BACKGROUND AND RELEVANT FACTS

Plaintiff, A., is the mother of B., a first-grade student who was attending a Laredo Independent School District (LISD) elementary school at the time the events giving rise to this cause of action took place. [Dkt. No. 17, ¶¶ 1, 3]. According to Plaintiff's Second Amended Complaint, B. suffered injuries as a result of physical abuse, including sodomization, at the hands of several of B.'s peers in the elementary school boys' restroom. [Dkt. No. 17, ¶ 3-7].

During the months preceding the injurious incidents, Plaintiff allegedly complained that other boys were "chasing" and "detaining" B. in the boys' restroom, behavior which Plaintiff asked B.'s teacher and Defendant Principal to investigate and thereafter prevent. [Dkt. No. 17, ¶ 19].

Plaintiff claims her pleas were ignored, and that Defendants' failure to curb the harassment in its incipient stage ultimately caused B.'s injuries. [Dkt. No. 17, ¶¶ 4, 6, 19].

On March 24, 2005, Plaintiff filed suit in the 341st District Court, Webb County, Texas. [Dkt. No. 1-4 at 2]. In her Second Amended Complaint, Plaintiff asserted: (1) against Defendant Principal a claim of excessive force; and (2) a claim of negligence. Against both Defendants, Plaintiff further advanced claims pursuant to 42 U.S.C. § 1983 premised on (3) a violation of B.'s substantive due process rights under the Fourteenth Amendment; and (4) Defendants' violation of B.'s rights under 20 U.S.C. § 1681, often referred to as "Title IX." [*See*, *e.g.*, Dtk. No. 17, ¶ 19].

On December 9, 2005, Defendants filed their Notice of Removal pursuant to 28 U.S.C. § 1446(a). [Dkt. No. 1]. On July 9, 2006, Defendants filed the Motion for Judgment on the Pleadings now before the Court. [Dkt. No. 14].

## II.    DISCUSSION

Under the Federal Rules of Civil Procedure, if a defendant is going to move for dismissal of the claims against her, she must do so before filing her answer. *Greninger*, 188 F.3d at 324. The pre-trial mechanism established by Rule 12(c)—judgment on the pleadings—has been read to serve the same purpose as Rule 12(b)(6), except that it may be invoked "after the pleadings are closed," *id.*, so long as the motion does not "delay trial," FED. R. CIV. P. 12(c). Therefore, Defendants' Motion for Judgment on the Pleadings will be treated as a motion premised "on [Plaintiff's alleged] failure to state a claim on which relief may be granted" under Rule 12(b)(6). *Greninger*, 188 F.3d at 324.

Under Rule 12(b)(6), dismissal is warranted when it is clear that a plaintiff can "prove no set of facts in support of his claim that would entitle him to relief." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (citing *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990)). In evaluating the sufficiency of the pleadings, a court treats all well-pleaded facts as true, "viewing them in the light most favorable to the plaintiff." *Id.* (citing *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1999)). A court should not dismiss a claim unless the plaintiff would not be entitled to relief under "any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citing *Vander Zee v. Reno*, 73 F.3d 1365, 1368 (5th Cir. 1996)).

**A.  Governing Substantive Law**

Title 42 U.S.C. § 1983 provides, in relevant part, that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

Section 1983 suits premised on the government's failure to protect individuals from violence by private actors have generally been treated as substantive due process claims via the Fourteenth Amendment. *See*, *e.g.*, *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189 (1989), *Hillsboro Indep. Sch. Dist.*, 81 F.3d at 1409 (Garza, J., dissenting); *Seamons v. Snow*, 84 F.3d 1226, 1235 (10th Cir. 1996); *D.R. v. Middle Bucks Area Vocational Technical School*, 972 F.2d 1364, 1383 (3d Cir. 1992) (Sloviter, J., dissenting). In other words, in this discrete set of substantive due process cases, the government is alleged to have deprived the claimant of her constitutional right to government aid, protection, or services for the purposes of preventing a specific injury. *See*, *e.g.*, *DeShaney*, 489 U.S. at 196.

3

Generally preempting such claims is the oft-repeated principle that "the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *Id.*; (citing *Harris v. McRae*, 448 U.S. 297, 317-18 (1980); *Lindsey v. Normet*, 405 U.S. 56, 74 (1972); *Youngberg v. Romeo*, 457 U.S. 307, 317 (1982)). Nevertheless, an analysis of on-point inter-circuit caselaw reveals several tentatively recognized exceptions to this rule. First, such claims are cognizable when a "special relationship," usually custodial in nature, existed between the state and the plaintiff, thereby giving rise to a special duty of protection. *Hillsboro*, 81 F.3d at 1414. Second, such substantive due process claims will be entertained in some circuits when the injury allegedly arose out of a "state-created danger." *See Piotrowski v. City of Houston*, 51 F.3d 512, 517 (5th Cir. 1995) (discussing the theory generally, although not recognizing it as cognizable under § 1983). Plaintiff's substantive due process claim rests on both of these distinct theories.

### B. Special Relationship Claim

The "special relationship" theory derives from the fact that "in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals." *Deshaney*, 489 U.S. at 198. Restated, "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *Id.* at 199-200; *Youngberg*, 457 U.S. at 317 (establishing rule for involuntarily committed mental patients).

"Regardless of the theory of liability that a plaintiff is pursuing, in order to state a viable substantive due process claim the plaintiff must demonstrate that the state official acted with culpability beyond mere negligence." *McClendon v. City of Columbia*, 305 F.3d 314, 326 (5th

Cir. 2002). In the context of special relationship substantive due process claims, such culpability is usually termed "deliberate indifference." *See*, *e.g.*, *DeShaney*, 489 U.S. at 198 n.5; *Estelle v. Gamble*, 429 U.S. 97 (1976) (seminal case establishing such scienter for prison-condition suits, although, strictly speaking, such claims are rooted in the Eighth Amendment). Thus, in order to recover under the special relationship theory, a plaintiff must show that (1) she was in "custody" at the time of her injury, thereby making the relationship "special"; and (2) that the individual acting under the color of state law did so with deliberate indifference, a culpability that was the proximate cause of the plaintiff's constitutional deprivation.

Plaintiff argues that a special relationship between LISD and B. existed because the latter, during the school day, "was involuntarily confined against his will through the affirmative exercise of state power . . . ." [Dkt. No. 17, ¶ 18]. Plaintiff's assertion of a special relationship by way of compulsory school attendance rings familiar to most federal circuits, including the Fifth, for that circuit, in *Hillsboro Independent School District*, established that this generally does not equate with custody for the purposes of the special relationship theory. 113 F.3d at 1414. In doing so, the Fifth Circuit joined all other circuits to have addressed the issue. *See id.* at 1415 (citing *Seamons*, 84 F.3d at 1236; *Sargi v. Kent City Bd. of Educ.*, 70 F.3d 907, 911 (6th Cir. 1995); *Dorothy J. v. Little Rock School Dist.*, 7 F.3d 729, 732 (8th Cir. 1993); *D.R. by L.R. v. Middle Bucks Area Vo. Tech. School*, 972 F.2d 1364, 1368-73 (3d Cir. 1992) (en banc); *J.O. Alton Community Unit School Dist. 11*, 909 F.2d 267, 272 (7th Cir. 1990)).

This caselaw, however, does not categorically foreclose Plaintiff's argument that custody arises out of compulsory school attendance in some circumstances. Central to each of the above circuit decisions was the Supreme Court's prior declaration that:

> [t]hough attendance may not always be voluntary, the public school remains an open institution. *Except perhaps when very young*, the child is not physically

5

> restrained from leaving school during school hours; and at the end of the school day, the child is invariably free to return home. Even while at school, the child brings with him the support of family and friends and is rarely apart from teachers and other pupils who may witness and protest any instances of mistreatment.

*Ingraham v. Wright*, 430 U.S. 651, 670 (1977) (emphasis added).

The emphasized language represents a variable that ostensibly controls the inquiry—the given child's age. B. was seven years old when the various incidents in the boys' restroom took place. [Dkt. No. 17, ¶ 18]. "Except perhaps when very young" is a qualification that has not yet produced a bright line rule establishing the childhood age after which compulsory attendance ceases to equate with custody. Further complicating the matter is the fact that B. was, at the time of his injury, younger than any of the children at issue in analogous caselaw. This obviously raises the question of whether B.'s age converts his compulsory attendance into custody in light of the reality, implicitly recognized in *Ingraham*, that "very" young children are not cognizant of their practical freedom to flee a dangerous environment or otherwise break boundaries and challenge authority.

The notion that a seven year-old child can be expected to assert his liberties in the face of institutional authority is questionable to say the least. At such an age, it is difficult to see, at least near the moment the injury is inflicted, how compulsory attendance is not equivalent to confinement or custody as these terms are used in a lay sense. One may intuitively conclude that this reality gives rise to a commensurate supervisory duty to protect the child's basic physical safety. This seems especially common-sensical in light of the fact that compulsory attendance laws preclude a parent from remaining with the young child during the day. However, notwithstanding the obvious attributes of custody reflected in this case, it is not at all clear that the Fifth Circuit would consider B.'s age as a variable worthy of distinguishing treatment.

6

Additionally, assuming custody, Plaintiff would have to prove deliberate indifference on the part of Defendants as part of her substantive due process claim. As mentioned *supra*, in order to sufficiently plead deliberate indifference, a plaintiff must allege more than mere negligence. *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). "Actions and decisions by officials that are merely inept, erroneous, [or] ineffective" do not amount to deliberate indifference. *Alton v. Texas A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) (citing *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 218 (5th Cir. 1998)). Rather, deliberate indifference is likened most often to "recklessness," or "wantonness." *See Wilson*, 501 U.S. at 299; *Farmer*, 511 U.S. at 825.

Plaintiff's culpability allegations each suffer from one or both of two infirmities: each either alleges culpability that cannot amount to more than negligence and/or alleges culpability that is premised on facts which, according to Plaintiff's own narrative of events, could not have been known to Defendants at the time of B.'s injury, thereby precluding the possibility that Defendants' failure to act on such information was the proximate cause of B.'s injuries.

For example, deliberate indifference is allegedly demonstrated by Defendants' failure to adequately respond to Plaintiff's complaints that B. was being harassed by other students. [Dkt. No. 17, ¶ 19]. However, at the time of B.s injuries, as Plaintiff admits, Defendants received complaints only that the culprits were "chasing" B. and "attempting to detain" him in the boys' restroom. [Dkt. No. 17, ¶ 4]. Although, assuming the truth of these allegations, Defendants were clearly on notice that B. was experiencing problems with other students, it can hardly be deemed foreseeable that such conduct would lead to serious violence or sexual abuse. Unfortunately, children chase each other quite frequently, and often single out others to "pick on." Although wise school administrators would combat any student conduct disruptive to other students' learning experience, Defendants' alleged failure to do so cannot represent more than the kind of

7

mere poor judgment, ineptness, or ineffectiveness falling qualitatively short of deliberate indifference. *See Alton v. Texas A&M Univ.*, 168 F.3d at 201.

Further, Plaintiff alleges that Defendants failed to respond with common prudence, or for that matter, with measures called for by various administrative rules governing faculty responses to school problems. [Dkt. No. 17, ¶ 19]. For example, Plaintiff faults Defendants because they failed to "provide or inform a sexual harassment officer in compliance with Title IX of the Education Amendments of 1972 . . . ." [Dkt. No. 17, ¶ 19]. Assuming for the moment that these failures, if true, would be relevant to Plaintiff's case, they nevertheless overlook the temporal requirement that Defendants' conduct be the proximate cause of the corresponding injury, as Defendants, according to Plaintiff's factual allegations, did not receive complaints of sexual assault, or clearly dangerous conduct, until after B.'s injuries allegedly occurred. [Dkt. No. 17, ¶¶ 3-10]. Obviously, then, Defendants' failure to heed those complaints could not have prevented B.'s injuries.

In short, Plaintiff's substantive due process claim premised on the special relationship theory, assuming the truth of the allegations, cannot survive Rule 12(b)(6) analysis, which, in the context of a suit against a public school, is exceedingly stringent.

### C.  State-Created Danger

Although it has been asked to do so on several occasions, the Fifth Circuit has "never recognized [the] state-created danger [theory] as a trigger of state affirmative duties under the Due Process Clause." *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 249 (5th Cir. 2003). Even if the theory were applicable, it would fail in this case, as the theory relies on deliberate indifference, a level of culpability Plaintiff decidedly cannot satisfy. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 249 (5th Cir. 2003).

### D. Title IX

"[A] recipient of federal education funds may be liable in damages under Title IX where it is deliberately indifferent to known acts of sexual harassment by a teacher." *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 641 (1999). Because Plaintiff cannot show deliberate indifference, Plaintiff's Title IX claim must fail.

Additionally, the Fifth Circuit has established that Title IX does not create a cause of caution against a school for peer sexual harassment unless it can be shown that:

> . . . the school district responded to sexual harassment claims differently based on sex. Thus, a school district might violate [T]itle IX if it treated sexual harassment of boys more seriously than sexual harassment of girls, or even if it turned a blind eye toward sexual harassment of girls while addressing assaults that harmed boys.

*Rowinsky v. Bryan Indep. Sch. Dist.*, 80 F.3d 1006, 1016 (5th Cir. 1996). Plaintiff advances no such allegation.

### III.   CONCLUSION

With respect to Plaintiff's § 1983 claims based on the special relationship and state-created danger theories, as well as her claim under Title IX, Defendants' Motion for Judgment on the Pleadings is **GRANTED**.

Plaintiff also sues Defendant Principal for the state torts of negligence and excessive force. At the time of removal, this Court enjoyed federal-question subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1331. The Court's jurisdiction over Plaintiff's state law claims, however, is pendant rather than original. "When a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims." *Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999). "The dismissal of the pendent claims should expressly be *without* prejudice so

that the plaintiff may refile his claims in the appropriate state court." *Id.* Accordingly, Plaintiff's state claims of negligence and excessive force are **DISMISSED without prejudice.**

IT IS SO ORDERED.

Done this 22nd day of January, 2007, in Laredo, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

**TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN SENT ONE BY THE COURT.**